No. 12571

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

In the Matter of the Estate
of
UNA M. NEWMAN, Deceased

and

NELSON S. CARPENTER, AMELIA B.
CARPENTER and MARCIA CARPENTER
LULL,

     Objectors and Appellants,

vs.

ELLEN TSCHACHE, HELEN MACQUARRIE and
EMMA MONROE,

     Petitioners and Respondents.

---

Appeal from: District Court of the Eighteenth Judicial District,
     Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

 For Appellants:

   Landoe and Gary, Bozeman, Montana
   H. B. Landoe argued, Bozeman, Montana
   Holter and Heath, Bozeman, Montana

 For Respondents:

   Berg, Angel, Andriolo and Morgan, Bozeman, Montana
   Ben E. Berg argued, Bozeman, Montana

---

       Submitted: January 15, 1974

       Decided JAN 3 1 1974

Filed: JAN 3 1 1974

Thomas J. Kearney
         Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

This is an appeal from an order admitting a lost will to probate in the district court of Gallatin County.

This case arose when, after the death of Una M. Newman, a carbon copy of a purported Last Will and Testament of the deceased was found.

Una M. Newman died on April 19, 1973, a resident of Gallatin County at the time of her death. Special letters of administration were granted, appointing Ellen Tschache and Helen MacQuarrie, two of the respondents herein, as special administratrixes on April 20, 1973. On April 23, 1973, George W. McKean, the public administrator of Gallatin County petitioned for letters of administration, and to revoke the letters of special administration previously issued.

The petition filed by George W. McKean to revoke the special letters of administration previously issued was initially heard on April 30, 1973. This hearing was continued. On April 30, 1973, a petition seeking letters of administration with will annexed was filed by respondents herein, requesting admission to probate of the Last Will and Testament of Una M. Newman, deceased, and attaching a copy of same thereto.

On May 15, 1973, opposition to the probate of this will was filed on behalf of Nelson S. Carpenter and Amelia B. Carpenter, the second cousins of the deceased and Marcia Carpenter Lull, another heir-at-law of the deceased, the appellants herein. On May 21, 1973, the petition for letters of administration with will annexed and the opposition to probate of will were heard.

Thereafter, and on June 4, 1973, findings of fact and conclusions of law were issued by the district court of the eighteenth judicial district admitting the unsigned copy of the last will and testament of Una M. Newman, deceased, to probate, and

on June 8, 1973, letters of administration with will annexed were issued to respondents. A motion to amend the findings was made on behalf of appellants on June 12, 1973. The motion was overruled, and this appeal was taken.

The copy of the will admitted to probate was unexecuted and contained no subscribing witnesses. The week after the death of the deceased a search was made of her safety deposit box at the Security Bank of Bozeman, and no will was found as a result of that search. Ellen Tschache, a close personal friend of deceased, testified that she and Helen MacQuarrie, also a friend of deceased found the document marked "copy of will", which was admitted to probate, in a little tin box which was locked and located in the bedroom of deceased's home. Mrs. Tschache testified that deceased had told them to look into the box, that there was something in there.

Helen MacQuarrie testified that she had known the deceased since approximately 1929. She stated that during the last month or six weeks and also that nine days prior to the death of the deceased she had discussions with deceased regarding her estate and that deceased had stated that her will was outdated, that the folks that were in it were all deceased, and that the administrators were deceased.

Ott Tschache testified that he had been acquainted with deceased for approximately thirty years and that he and deceased would visit back and forth in each others homes. He testified that on many occasions in a fleeting manner deceased would state to him that she would like to or needed to change her will. His testimony also indicates that an attorney named Horkan, now deceased, may have prepared a will for deceased.

A few hours before the death of deceased, attorney Robert Holter of Bozeman, went to the hospital at the request of a friend

- 3 -

of the deceased for the express purpose of preparing a will for the deceased. During the course of the conversation with Holter, which lasted 20 to 30 minutes, Holter was unable to determine what deceased wished to do with her estate. He was unable to get enough information from his conversation with her to prepare a will.

Attorney H.A. Bolinger of Bozeman testified that he thought he might have drafted a will for deceased because of the things that he remembered about the will. He did not have a distinct recollection of a lot of the things that were in it. Bolinger testified that he had represented deceased in connection with her husband's estate in 1949. The copy of the will admitted to probate bears the year 1949. He also testified as to what his ordinary practice is for the execution of wills and that in the ordinary course of practice he, as well as his secretary, would have signed as witnesses. Bolinger, however, did not have a distinct recollection of either he or his secretary signing the will.

Although Bolinger did testify that ordinarily he did not make copies of a will, he did state that if somebody specifically asked him for a copy that he would make one.

A search of the desk in the living room of the deceased's house uncovered an envelope marked "Will" with the name of Bolinger & Bolinger on it. There was no will in this envelope. Also found in the desk was an envelope with the designation "Last Will and Testament" typed upon it. On that document, in deceased's hand-writing, was the statement, "Horkan has signed one." A search of Horkan's files failed to produce the original of the will.

Appellants' sole issue on appeal is whether the district court erred in admitting the document purporting to be the Last Will and Testament of Una M. Newman, deceased, to probate.

The resolution of the issue presented is determined by reference to sections 91-1201 and 91-1202, R.C.M. 1947, which provide the requirements for proving a lost or destroyed will. Section 91-1201, R.C.M. 1947 states as follows:

> "Whenever any will is lost or destroyed, the district court must take proof of the execution and validity thereof, and establish the same; notice to all persons interested being first given, as prescribed in regard to proofs of wills as in other cases. All the testimony given must be reduced to writing, and signed by the witnesses."

Section 91-1202, R.C.M. 1947 provides:

> "No will shall be proved as a lost or destroyed will, unless the same is proved to have been in existence at the time of the death of the testator, or is shown to have been fraudulently destroyed in the lifetime of the testator, nor unless its provisions are clearly and distinctly proved by at least two credible witnesses."

The provisions of these statutes when taken together require that three criteria must be met in order to admit a lost or destroyed will to probate. These are: (1) proof as to the execution and validity of the will; (2) proof that the will was in existence at the time of the death of the testatrix; and (3) clear and distinct proof of the provisions of the will by at least two credible witnesses. While the district court concluded in its findings of fact that the will had been duly executed, we must hold that the district court erred in admitting the purported will to probate for the reason that the criteria of section 91-1202, R.C.M. 1947 were not met.

The burden of proving the existence of a lost or destroyed will in Montana is clear. This Court in In re Colbert's Estate, 31 Mont. 461, 471, 78 P. 971, stated:

> "Now, as we have heretofore seen, the statute is to the effect that the proponent of a lost will must prove either that the will was actually in existence at the time of the testator's death, or that it is in existence in contemplation of law. If it was fraudulently destroyed in his

lifetime, it is still so in existence. If appellant cannot prove that the will was in existence, either actually or in contemplation of law, at the time Colbert died, it follows that his case cannot stand."

Not only do the proponents of the proposed will have the burden of proof to establish its existence when it is a lost will, but also where no testamentary papers have been found after a careful and exhaustive search, as in this case, a presumption arises that the deceased destroyed the will *animo revocandi* (with intention to revoke). Furthermore, this being the case, the burden of proof is on the proponents, respondents herein, to overcome this presumption, and the proof required must be "clear, satisfactory and convincing". In re Colbert's Estate at 468. There is no suggestion of fraud in this case.

The California court, in In re Flood's Estate, 47 C.A.2d 809, 119 P.2d 168, 170, construing statutes identical to those in Montana held:

"Appellant contends that the facts bring the case within the rule stated in 27 Cal.Jur., page 807, section 141: 'Where the evidence shows that the instrument cannot be found, and that when last seen or known to exist it was in the custody or possession of the decedent, the conclusion of law is that the writing was destroyed by the decedent, and that he acted with the intention of effecting a revocation thereof. Nothing else appearing, the admission of the writing to probate as a lost or destroyed will must be denied.'"

Respondents contend that there is no evidence in this case indicating that the will was in deceased's possession at or near the time of her death, while appellants contend that there is no proof that the will was in anyone's possession at the time of death, other than possibly that of deceased. The Supreme Court of Oregon, in In re McCoy's Will, 49 Ore.579, 90 P. 1105, 1106, in considering the presumption as heretofore stated, has said:

- 6 -

> "It must, we think, be taken for granted, therefore, that the will when last seen was in the custody of the testator, and since it could not be found after his death a legal presumption is raised that it was destroyed by him with the intention of revoking it, and the burden of proof is on the proponent to overcome this presumption." In re Salter's Estate, 209 Ore. 536, 307 P.2d 515, 522.

In the instant case it must be taken for granted, that the will when last seen was in the custody of the deceased. This would be presumed from the fact that attorney Holter testified: "Her answer was of such that it lead me to believe she had a will," and deceased indicated that the document was kept at the Security Bank. In addition, the testimony of Mrs. MacQuarrie and Mr. and Mrs. Tschache to the effect that a will had once been prepared but, however, was now outdated, and another will was needed supports the conclusion that the will when last seen was in the custody of the deceased.

Therefore, it must be presumed that the will, when last seen, was in the custody of the testator and that the deceased destroyed the will. As this Court has previously stated:

> " * * * The will is, according to law, of an ambulatory character. No one except the testator has any rights in it whatsoever. No other person can have any rights in it until the testator is dead. He may change it at pleasure, and human experience has shown that wills are almost always destroyed secretly." In re Colbert's Estate at 471.

The evidence in this case is not clear, satisfactory and convincing to overcome the rebuttable presumption that the deceased destroyed her will. To the contrary, the conclusion to be drawn from the testimony is that the deceased did have a will, and having expressed displeasure with the will, secretly destroyed it. Since there was no proof to overcome the presumption of destruction by the deceased, the district court erred in concluding:

" * * * the original of said document was lost
or destroyed unintentionally and not destroyed
with the intent of revoking the same. * * *"

For the reason that the respondents did not meet their burden of proof that the will was actually in existence or in existence in contemplation of law at the time of deceased's death, and for the reason that the presumption of destruction is not overcome by the testimony adduced at the hearing, the district court erred in admitting the will to probate.

Having concluded that the criteria as to proof of the existence of the will was not met, we need not at this time consider whether the provisions of the will were clearly and distinctly proved.

For the foregoing reasons, the order of the district court admitting the copy of the will to probate is hereby reversed and the estate of the deceased is to be distributed by the laws of intestate succession.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

- 8 -