No. 13015

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

IN THE MATTER OF THE ESTATE
OF JOSEPH W. SPEAR, Deceased

Appeal from:    District Court of the *Fourteenth* ~~Fourth~~ Judicial District,
                Honorable Nat Allen, Judge presiding.

Counsel of Record:

    For Appellant:

        Towe, Neely and Ball, Billings, Montana
        Thomas E. Towe argued, Billings, Montana

    For Respondent:

        Bolinger and Wellcome, Bozeman, Montana
        H. A. Bolinger argued, Bozeman, Montana
        Crowley, Kilbourne, Haughey, Hanson, Gallagher,
         Billings, Montana

                        Submitted:  November 4, 1975

                        Decided:  JAN 12 1976

Filed:  JAN 12 1976

_Thomas J. Kearney_
                                    Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

Appellant, petitioner for probate of a lost will in the district court, seeks reversal of a judgment of the district court, Musselshell County, the Hon. Nat Allen, presiding without a jury. The judgment denied the petition and allowed administration to continue in accordance with the descent and distribution statutes of Montana.

Joseph W. Spear, a resident of Musselshell County, died August 10, 1973. His estate consisted of 640 acres of real estate, 23 head of cattle, 582 hogs, and a house located on the land. Those surviving him included his sister Muriel S. Farmer, grandnephew John W. Owen, petitioner and appellant here, two other sisters, two brothers, a nephew and a niece. No will of deceased could be located and Muriel was appointed administratrix of the estate on August 31, 1973. Notice to creditors was published and claims were filed.

On August 12, 1974, petitioner filed a petition to probate a lost will. The lost will, according to petitioner, was prepared by attorney Thomas M. Ask, and it provided that all of decedent's property would be divided between Muriel and petitioner. The basis for this determination by decedent appears to have been Muriel's monetary assistance and labor which she donated to decedent's ranching operation, and the filial relationship between petitioner and decedent, who had been the petitioner's legal guardian since the petitioner was age 6.

The lost will was alleged to have been properly executed, unrevoked, and in existence at the time of death. Attached to the petition was the affidavit of Thomas M. Ask setting forth the date the will was drafted, that the will was properly executed, as well as the general provisions of the lost will. It also stated that in June or July 1973, Joseph W. Spear had come to Ask's office

seeking some changes in the will. The changes sought would have effected a specific division of the estate between petitioner and Muriel. Half the land and all the cattle would go to petitioner, while Muriel would get half the land and the entire hog operation. This contrasted with the alleged lost will which provided for a distribution to Muriel and Owen in common of the estate. Spear had concluded such distribution would not be manageable and only result in dispute. A new will was subsequently drafted incorporating these changes but was never executed because of Spear's death.

A hearing on the petition for probate of the lost will was held September 27, 1974. Decedent's attorney, Thomas Ask, testified, along with his former secretary who had typed the alleged lost will. Also, petitioner Owen testified at the hearing. After the hearing, the district court determined the presumption that the testator Spear had destroyed the lost will intending to revoke it, had not been rebutted by petitioner. In addition, the district court concluded that insufficient proof of the provisions of the will had been presented in view of the requirements of section 91-1202, R.C.M. 1947. Based on these determinations the district court refused to admit the lost will to probate. This appeal ensues from those district court determinations.

The issues presented in this appeal may be summarized:

1. Did the petitioner present sufficient proof to overcome the presumption that decedent had destroyed the lost will, intending to revoke it?

2. Did the petitioner prove the provisions of the lost will clearly and distinctly by at least two credible witnesses as required by section 91-1202, R.C.M. 1947?

Section 91-1202, governs the admission of lost wills to probate and provides:

- 3 -

"No will shall be proved as a lost or destroyed
will unless the same is proved to have been in
existence at the time of the death of the testator,
or is shown to have been fraudulently destroyed
in the lifetime of testator, nor unless its pro-
visions are clearly and distinctly proved by at
least two credible witnesses." (Emphasis supplied.)

With respect to the issues, the findings of fact and

conclusions of law of the district court were, in part:

"IV.   That testimony introduced herein indicates
that a search was made for the Last Will and Testa-
ment of Joseph W. Spear, or a copy thereof, and
neither the original of said Will was ever found
by Muriel S. Farmer, nor was a copy of said Will
found by Thomas M. Ask.

"V.   That there has been no testimony introduced in
support of the proof of the lost Will which indi-
cates that the Will was in existence at the time of
the testator's death, nor is there any testimony
which indicates that such Will had been fraudulently
destroyed during the lifetime of Joseph W. Spear.

"VI.   That the testimony introduced herein pertain-
ing to the provisions of the lost Will has not been
sufficient to clearly and distinctly prove the lost
Will by two credible witnesses, the only witness
who testified with credibility in connection with
the provisions of said lost Will being Thomas M.
Ask.

"VII.   That although a search was made to find the
lost Will, or a copy thereof, such search did not
reveal either the original lost Will, nor any copy,
and by reason thereof a presumption arises that
Joseph W. Spear destroyed the Will with intention
to revoke it; that there is no clear, satisfactory
and convincing evidence to overcome this presumption.

"AND FROM THE FOREGOING FINDINGS OF FACT THE COURT
CONCLUDES AS A MATTER OF LAW AS FOLLOWS:

"I.   That the purported Last Will and Testament of
Joseph W. Spear has not been sufficiently proved
in accordance with Section 91-1202, R.C.M. 1947.

"II.   That no evidence has been introduced which
would overcome the rebuttable presumption that the
decedent, Joseph W. Spear, destroyed his Last Will
and Testament with intention to revoke it.

"III.   That the Petition to Probate the Lost Will
of Joseph W. Spear should be denied and the Adminis-
tratrix directed to continue with the administration
of the estate and to distribute the estate of Joseph
W. Spear to his heirs at law in accordance with the
statutes of the State of Montana in such cases made
and provided."

- 4 -

The only person who testified as to the contents of the will in a clear and distinct manner was attorney Ask who prepared the will which was apparently executed in 1968 or 1969. Also, Mr. Ask was the only witness who lends any evidence that the will may have been in existence some 2 or 3 weeks before death because when decedent requested that a new will be prepared, he told his attorney that he did not bring his old will with him because " * * * he didn't have time to look for it." And also that, "I don't need it, I know the changes I want to make." Then, petitioner Owen testified as to the decedent's life style, and that losing or misplacing a will was consistent with that life style.

But for our purposes here, arguendo, we will accept the fact the will was in existence at the time of death.

Returning now to our statement that Mr. Ask was the only witness who testified as to the contents of the will in a clear and distinct manner, we examine the other two witnesses' testimony--Mrs. Bowers, former secretary to attorney Ask, testified:

> "Q. And do you recall whether or not Mr. Spear asked Mr. Ask for a will? A. Yes.
>
> "Q. To prepare a will, what do you remember about the will? A. Well, I remember typing the will, I remember one heir that was made because I happen to know who he was.
>
> "Q. Who was that? A. That was John Owen.
>
> "Q. How do you remember? A. He knew my daughter and I knew him through school and knew who he was."

She did not recall witnessing the will and specifically did not recall the provisions of the will other than one heir as she stated above. She testified further:

> "Q. Mrs. Bowers when you were secretary in the office and typed the will, can you tell me whether or not you witnessed the will? A. Yes, quite often.
>
> "Q. And can you tell me whether or not you recall doing so on this occasion? A. No, I can't tell you

- 5 -

if I did or not, if there were two of us in the
office one or the other would witness it.  If I
were in the office alone I witnessed it.  We had
a lot of wills to handle so I can't recall all
of them."

John Owen, petitioner here, was allowed over objection
to testify:

"A.  Well the conversation, you know--I don't know
exactly how the conversation went.  I know I was
concerned because I had previously had bad luck with
estates and I know he had too, and I can't remember
exactly how I asked him, if he had things, you know,
set for his death or his estate or anything, but I
do remember that he indicated to me that he had, but
that he wasn't happy with it, and that by this time
Muriel and I had had several good rows and he figured
we couldn't get along and for an equal distribution.

"Q.  Did he indicate at this time that he had a will?
A.  Yes.

"Q.  Did he tell you what the provisions of that
will were?  A.  Kind of share and share alike.

"Q.  With whom?  A.  With Muriel.

"Q.  That is between you and Muriel?  A.  Yes.

"Q.  Did he indicate who the administrator was?
A.  No.

"Q.  Did he indicate that any other person was to
receive any portion of the farm or his operation?
A.  No.  As a matter of fact that is about as far
as the conversation went, we dropped the subject
and we went on to something else."

Thus, it is seen that the witnesses Bowers and Owen did

not have any clear and distinct knowledge of the contents of a

will.

This evidence fails to meet the requirements of section

91-1202, R.C.M. 1947.  This Court articulated the rules set out

in that section in In re Estate of Newman, 164 Mont. 15, 518 P.2d

800.  In that case the Court found it unnecessary to address

itself to the criteria of clear and distinct proof of the provi-

sions of the will by at least two credible witnesses.  However,

the Court did distinctly define the burden of proof in such a

lost will situation.  The evidence in the instant case simply is

- 6 -

not sufficient to prove by clear and distinct proof by two credible witnesses the provisions of the lost will.

Accordingly, the district court was correct and is affirmed.

_Wesley Castles_
                                                         Justice

We concur:

_James T. Harrison_
Chief Justice

_Frank I. Haswell_

_John Conway Harrison_

_Gene B. Daly_
Justices