No. 13391

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

IN THE MATTER OF THE ESTATE
OF WALLACE J. HARTMAN, SR.,
Deceased.

---

Appeal from:  District Court of the First Judicial District,
              Honorable Gordon R. Bennett, Judge presiding.

Counsel of Record:

    For Appellant:

        Graybill, Ostrem, Warner and Crotty, Great Falls,
         Montana
        George R. Crotty, Jr. argued, Great Falls, Montana

    For Respondent:

        Rapkoch and Knopp, Lewistown, Montana
        Peter L. Rapkoch argued, Lewistown, Montana

---

                        Submitted:  January 21, 1977

                         Decided:  APR 28 1977

Filed:  APR 28 1977


*Thomas J. Kearney*
                              Clerk

Mr. Chief Justice Paul G. Hatfield delivered the Opinion of the Court.

This is an appeal from an order of the district court, Lewis and Clark County, admitting to probate a carbon copy of the will of Wallace J. Hartman, Sr., hereinafter referred to as decedent.

Decedent was a resident of Lewis and Clark County at the time of his death on January 29, 1976. He was survived by three children: Wallace J. Hartman, Jr., Shirley Hartman, respondent here, and Delores Puckett, appellant here. It is undisputed that decedent had properly executed a will on March 22, 1974, in the office of Charles M. Joslyn, an attorney in Choteau, Montana. The original will was given to decedent and a carbon copy retained by the attorney. This will provided that Delores Puckett receive $10.00, Wallace J. Hartman, Jr. receive $1,000 and some personal property, and Shirley Hartman receive the remainder of the estate. Evidence presented indicated the estate exceeds $1,000,000.

On the date of decedent's death, Wallace J. Hartman, Jr., his wife, Janny, Shirley Hartman, and her fiance searched decedent's automobile and residence in Lincoln, Montana. Decedent's personal property and papers were taken to the house of Wallace J. Hartman, Jr. in Great Falls, Montana. A subsequent examination of these papers did not reveal a will. Wallace J. Hartman, Jr. was appointed personal representative of the estate. Thereafter, Shirley Hartman presented a carbon copy of the March 22, 1974 will for probate. The district court entered its order admitting the carbon copy to probate.

The primary conflict concerns the procedure and the proof required to probate a lost will under Montana's Uniform Probate Code, Section 91A-1-101, et seq., R.C.M. 1947.

Prior to enactment of Montana's Uniform Probate Code,

sections 91-1201, 1202, R.C.M. 1947, imposed special require-
ments of proof in formal testacy proceedings seeking the probate
of lost or destroyed wills.  Section 91-1201, R.C.M. 1947,
provided:

> "Whenever any will is lost or destroyed, the
> district court must take proof of the execution
> and validity thereof, and establish the same;
> notice to all persons interested being first given,
> as prescribed in regard to proofs of wills as in
> other cases.  All the testimony given must be
> reduced to writing, and signed by the witnesses."

Section 91-1202, R.C.M. 1947, provided:

> "No will shall be proved as a lost or destroyed
> will, unless the same is proved to have been in
> existence at the time of the death of the testator,
> or is shown to have been fraudulently destroyed
> in the lifetime of the testator, nor unless its
> provisions are clearly and distinctly proved by
> at least two credible witnesses."

To establish a prima facie case under these statutes, it
was incumbent upon the proponent of a lost or destroyed will to
show affirmatively either that the will he proposed was in exis-
tence at the time of the death of testator or that it was fraud-
ulently destroyed during his lifetime, in addition to the execution,
validity and provisions of the will.  In re Colbert's Estate, 31
Mont. 461, 468, 78 P. 971; In re Estate of Una M. Newman, 164
Mont. 15, 19, 20, 22, 518 P.2d 800.  Colbert and Newman also
stated that a will, last seen in the possession of a testator,
which cannot be found after a careful and exhaustive search follow-
ing death, is presumed to have been destroyed by the testator
with the intent of revoking it, and that this presumption may be
rebutted by clear and convincing evidence to the contrary.

Montana's Uniform Probate Code contains no special stat-
utory requirements of proof when seeking probate of a lost or
destroyed will.  The official comment to section 91A-3-303, R.C.M.
1947, states:

" * * * Lost or destroyed wills must be established
in formal proceedings.  See Section [91A-3-402]. * * *"

Section 91A-3-402, R.C.M. 1947, which governs the contents of

petitions in formal proceedings, provides in pertinent part:

"If the original will is neither in the posses-
sion of the court nor accompanies the petition
and no authenticated copy of a will probated in
another jurisdiction accompanies the petition,
the petition also must state the contents of the
will, and indicate that it is lost, destroyed,
or otherwise unavailable."

Furthermore, Sec. 15, Chap. 263, Laws 1975 expressly repealed

sections 91-1201, 1202, R.C.M. 1947.

The instant case involves no dispute as to the execution

of the will, nor its provisions.  What respondent contends is

that the presumption favoring revocation under the circumstance

of this case was abolished when the special statutory require-

ments of proof under sections 91-1201, 1202, R.C.M. 1947 were

repealed.  Therefore since section 91A-3-407, R.C.M. 1947 places

the burden of proof of revocation upon the contestant, he must

so do without the benefit of the presumption of revocation.  Appel-

lant, on the other hand, contends that the presumption discussed

in Colbert and Newman still exists, and proponent must rebut the

presumption when it arises by showing the existence of the will

at the time of the testator's death.  Neither of these conten-

tions is entirely correct.

As found from a reading of Colbert and cases cited there-

in, the presumption favoring revocation which arises when a will

known to be in the testator's possession cannot be found after

his death, originated from the common law of England, where the

courts are not controlled by any positive statutory provisions.

Loxley v. Jackson, 3 Phill.Ecc. 126, 161 Eng. Reprint 1277 (1819);

Colvin v. Fraser, 2 Hagg.Ecc. 266, 162 Eng. Reprint 856, 874,

(1829); Lillie v. Lillie, 3 Hagg.Ecc. 184, 162 Eng. Reprint 1124

(1829).  Colvin explains the reasoning behind this presumption:

"All these presumptions, if they come to be analysed, may be resolved into the reasonable probability of fact, deduced from the ordinary practice of mankind and from sound reason. Persons in general keep their wills in places of safety, or, as we here technically express it, 'among their papers of moment and concern.' They are instruments in their nature revocable: testamentary intention is ambulatory till death; and if the instrument be not found in the repositories of the testator, where he had placed it, the common sense of the matter, prima facie, is that he himself destroyed it, meaning to revoke it * * *."

As this Court stated in Colbert citing In re Kennedy's Will, 30 Misc. Rep. 1, 62 N.Y.S. 1011:

"'"Legal presumptions are founded upon the experience and observation of distinguished jurists as to what is usually found to be the fact resulting from any given circumstances; and, the result being thus ascertained, whenever such circumstances occur, they are prima facie evidence of the fact presumed."'"

The controlling issue in this case is whether the presumption favoring revocation and the statutory requirements of proof in sections 91-1202 are one and the same. A thorough research of the law on this point indicates they are not.

A careful reading of Colbert and Newman show this Court was speaking of two separate and distinct rules of law when they considered the statute, on one hand, and the presumption on the other. In Newman, it is stated:

"Not only do the proponents of the proposed will have the burden of proof to establish its existence when it is a lost will, but also where no testamentary papers have been found after a careful and exhaustive search, as in this case, a presumption arises that the deceased destroyed the will animo revocandi (with intention to revoke). * * *

"For the reason that the respondents did not meet their burden of proof that the will was actually in existence or in existence in contemplation of law at the time of deceased's death, and for the reason that the presumption of destruction is not overcome by the testimony adduced at the hearing, the district court erred in admitting the will to probate." (Emphasis supplied.)

Likewise, the courts of New York have made the distinction that statutes in the nature of section 91-1202, R.C.M. 1947,

- 5 -

did not replace the common law presumption of revocation, but added to it. The court, in Knapp v. Knapp, Selden 6, 10 N.Y. 276, 278 (1851) stated:

> "It was well settled at common law by a long series of adjudications in the courts in England, and which have been followed by the courts of this state, that the presumption of law is, that a will proved to have had existence, and not found at the death of testator, was destroyed animo revocandi. (Betts v. Jackson, 6 Wend., 173; Idley v. Bowen, 11 Wend., 227.) And our statute has placed this matter beyond all cavil and doubt. It is as follows: 'No will of any testator, who shall die after this chapter shall take effect as a law, shall be allowed to be proved as a lost or destroyed will, unless the same shall be proved to have been in existence at the death of the testator or be shown to have been fraudulently destroyed in the lifetime of the testator; nor unless its provisions shall be clearly and distinctly proved by at least two credible witnesses, a correct copy or draft being deemed equivalent to one witness.' (2 R.S., 68, § 67.) This statute recognizes the former common law rule, by requiring proof either that the will was in existence at the time of the death of the testator, or that the legal presumption that the testator destroyed it animo revocandi be overcome by satisfactory proof that it was fraudulently destroyed in the lifetime of the testator."

The true distinction between the presumption of revocation and such statutory requirements of proof is that the former is a rule of substantive law governing revocation, whereas the latter is a procedural law governing the probate of lost or destroyed wills. This distinction is further explained in Justice Traynor's dissent in In re Bristol's Estate, 23 Cal.2d 221, 143 P.2d 689, 696:

> "While the overruling of In re Estate of Sweetman did much to dispel the confusion engendered by that case, the relation of Probate Code, section 350, to the presumption of revocation that is said to arise in these cases still requires clarification. If section 350 provided simply that a presumption of revocation arises in the case of a lost will, it would be necessary only to rebut the presumption to prove that the will was in existence at the time of the testator's death. A presumption of revocation independent of section 350 becomes superfluous, however, if the very existence of the will at the time of the testator's death must be proved. While proof of that existence establishes the fact of

- 6 -

nonrevocation, the converse does not follow that a will exists because there is no revocation thereof. It would therefore be idle to rebut the presumption of revocation if there were no proof that a will existed at the time of the testator's death.

> "Section 350 cannot reasonably be construed as creating a presumption of revocation. It is concerned, not with the rules governing revocation, which are specifically set forth in section 74 of the Probate Code, but with the procedure for establishing a lost or destroyed will. * * * Compliance with the substantive provisions that determine the status of the will as an executed instrument is not enough to render the will operative as a conveyance. A will cannot be given in evidence as the foundation of a right or title unless it has been duly probated * * * and section 350 prescribed the requirements that must be satisfied before a lost will can be probated. It is therefore not controlling that under the substantive provisions of the law, the will has been duly executed and has not been revoked, for it cannot be probated if the requirements prescribed in the Code for the probate of wills cannot be met. The requirement of proof that the will existed at the time of the testator's death cannot be translated into a requirement of proof of nonrevocation." (Emphasis supplied.)

Other authorities also point out this presumption is a substantive rule of law related to revocation by a physical act, rather than a procedural rule governing lost or destroyed wills.

9 Wigmore/Evidence 3d Ed, § 2523, states: on

> "The revocation of a will by destruction may be inferred, on a principle of Relevancy already considered * * * from the fact that it once existed but cannot be found at the testator's death." (Emphasis supplied.)

Atkinson Wills 2nd Ed, § 101, p. 553, states

> "The matter of revocation by physical act is complicated by the operation of presumptions under certain circumstances. Thus, it is often held that where the will was in testator's possession and cannot be found at the time of his death, it will be presumed that the testator destroyed it with intent to revoke, and the same has been held where a duplicate will in testator's possession cannot be found. Indeed it is often said that the burden of proof is on the proponent under these circumstances. * * *" (Emphasis supplied.)

Furthermore, this presumption is controlling in jurisdictions which do not have and never have had statutes imposing specific requirements of proof for probating lost or destroyed

wills.  This statement is found at Anno. 3 ALR2d 949, 986:

> "It has been provided by statute in some instances
> that no will shall be proved as a lost will unless
> it is shown to have been in existence at the time
> of the death of the testator, or is shown to have
> been destroyed either without his consent or
> fraudulently during his lifetime.  Among the juris-
> dictions which, as shown by the adjudications
> falling within the scope of this annotation, have
> had statutes which in effect so provide, are
> Arkansas, California, Indiana, Montana, New York,
> Ohio, and Washington."

Nevertheless, the annotation lists another 32 jurisdictions

which adhere to this presumption and have done so for a long

time, as evidenced by these few cases:  Throckmorton v. Holt,

180 U.S. 552, 21 S.Ct. 474, 45 L ed 663 (1901); McBeth v. Mc-

Beth, 11 Ala. 596 (1847); Weeks v. McBeth, 14 Ala. 474 (1848);

Allen v. Scruggs, 190 Ala. 654, 67 So 301 (1914); Valentine's

Will, 93 Wis. 45, 67 N.W. 12 (1896); Scoggins v. Turner, 98 N.C.

135, 3 S.E. 719 (1887); Shacklett v. Roller, 97 Va. 639, 34 S.E.

492 (1899).

Thus the repeal of sections 91-1201, 1202, R.C.M. 1947

did not abolish the rebuttable presumption of revocation, which

arises when a duly executed will, last seen in the testator's

possession, cannot be found at his death.  Section 91A-3-407,

R.C.M. 1947, provides in part:

> "In contested cases, petitioners who seek to
> establish intestacy have the burden of establish-
> ing prima facie proof of death, venue, and heir-
> ship.  Proponents of a will have the burden of
> establishing prima facie proof of due execution
> in all cases, and, if they are also petitioners,
> prima facie proof of death and venue.  Contestants
> of a will have the burden of establishing lack of
> testamentary intent or capacity, undue influence,
> fraud, duress, mistake or revocation.  Parties have
> the ultimate burden of persuasion as to matters
> with respect to which they have the initial burden
> of proof. * * *"

As the official comment states, this is a fairly general approach

to questions concerning burdens of going forward with the

- 8 -

evidence. In essence, the procedure is the same as that under the old law. As stated in In re Colbert's Estate, 31 Mont. 461, 466:

> "In order to simplify the discussion, it will be well to ascertain first what are the essentials in proving a lost will. In every case under our statute the rule of procedure is that the proponent of the will must first make out a prima facie case; that is to say, must make such proof as would entitle the will to probate in the absence of a contest. Then the contestant attacks the validity of the will, the proponent defends the same, and the contestant rebuts the testimony of the proponent."

What we have held is that the contestant may utilize this rebuttable presumption in meeting his burden of proving revocation. The proponent then has the burden of going forward with sufficient evidence to rebut this presumption.

However, appellant is mistaken in asserting that the proponent can only rebut the presumption by proving existence of the will subsequent to the testator's death. In addition to such evidence, the proponent may also show (1) that one other than the testator had possession of the will; (2) that the testator was on friendly or unfriendly terms with certain interested persons; (3) that the testator was physically or mentally incapable of destroying the will with the intent to revoke; or (4) that another had the opportunity to dispose of the will and benefit thereby. See 3 ALR2d 949. This list has not been exhausted; certainly there may be other factors relevant to the issue. In any event, the proof required must be clear, satisfactory and convincing. In re Colbert's Estate, supra.

The second issue raised by appellant is that the district court erred in disallowing certain declarations of decedent in which he allegedly stated to his son that he had destroyed his will and the reason for doing so. This issue is well settled in Montana by Colbert. Such declarations are not admissible,

unless they are a part of the res gestae, and are used to simply show the mental state of the testator when he either executed the will or when he destroyed it. An extensive discussion of the reasoning for this rule of law is provided in Colbert. The declarations sought by appellant were not admissible, since no act of destroying the will was ever proven. What appellant was trying to prove by these declarations was the act of destroying the will, not the intent of the decedent while the alleged destruction was taking place. The district court was correct in its exclusion of the evidence.

This case is remanded for hearing consistent with this opinion.

‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑
Chief Justice

We concur:

‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑

‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑

‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑

‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑
Justices