2008 ND 148

**In the Matter of the ESTATE OF Harry Wayne CONLEY, Deceased.**

**Margaret York, Petitioner and Appellee**

v.

**Albert E. Conley and Colin H. Conley, Co–Personal Representatives of the Estate of Harry Wayne Conley, Deceased, Respondents and Appellants.**

**No. 20070321.**

Supreme Court of North Dakota.

July 23, 2008.

James A. Reisnour (argued), Mackenzie & Reisnour, Jamestown, ND, for petitioner and appellee.

Joseph F. Larson II (argued), Larson Law Firm, Jamestown, ND, for respondents and appellants.

KAPSNER, Justice.

[¶ 1] Albert and Colin Conley, as personal representatives of the estate of Harry Wayne Conley, appeal a district court order determining testacy in the estate of Harry Wayne Conley. Because the district court erroneously failed to apply the common law presumption that a missing will is revoked, we reverse and remand for further proceedings consistent with this opinion.

I

[¶ 2] Harry Wayne Conley died on April 21, 2001, in Jamestown, North Dakota. Harry Wayne Conley never married and had no children. He was survived by his brother, Clayton Conley, and his sisters, Margaret York and Merle McKinney. His parents and one brother, Wesley Conley, predeceased him. Wesley Conley was survived by two sons, Albert Conley and Colin Conley.

[¶ 3] Harry Wayne Conley executed a will on January 19, 1982. Harry Wayne Conley's original 1982 will could not be found at the time of and after his death, but a conformed copy was obtained from the files of the lawyer who prepared it. Under the provisions of this missing will, Harry Wayne Conley's sister, Margaret York, would receive his entire estate. If Harry Wayne Conley's estate passed under the laws of intestacy, rather than the terms of his last known will, Harry Wayne Conley's estate would pass to and be shared among his brother, Clayton Conley, his two sisters, Margaret York and Merle McKinney, and Albert Conley and Colin Conley, the children of Harry Wayne Conley's deceased brother, Wesley Conley.

[¶ 4] Four years after Harry Wayne Conley's death in 2001, Harry Wayne Conley's nephews, Albert Conley and Colin Conley, initiated the probate of Harry Wayne Conley's estate and moved the district court to appoint them co-personal representatives of Harry Wayne Conley's estate. The district court granted their appointments in September 2005. Albert Conley and Colin Conley served a Notice and Information to Heirs and Devisees on all interested parties in September 2005.

[¶ 5] In May 2006, Margaret York filed a Petition to Establish Testacy and Right of Succession to the Estate Assets, and she requested that a conformed copy of Harry Wayne Conley's 1982 will be admitted into probate. The co-personal representatives responded by motion, stating, in part, that no original will had been found and that it is presumed that Harry Wayne Conley had revoked all prior wills and died intestate.

[¶ 6] The district court conducted a hearing on the estate in December 2006. During the hearing, Harry Wayne Conley's brother, Clayton Conley, and Harry Wayne Conley's nephew, Albert Conley, testified. Margaret York did not testify, nor did she present any witnesses, though she did cross-examine Clayton Conley. Before the hearing was conducted, the co-personal representatives filed the affidavits of Clayton Conley and Albert Conley and the notarized Certificate of Alma Lulay. Margaret York filed her affidavit and the depositions of Carol Nelson and the attorney who drafted Harry Wayne Conley's 1982 will.

[¶ 7] Clayton Conley's affidavit provided that he knew of the existence of the will and had seen it as late as Christmas 2000. His affidavit provided that he helped Harry Wayne Conley take care of his paperwork, that the original will had been placed inside a particular folder in a filing box, and that until Christmas 2000, Clayton Conley saw the will there a few times each year. Clayton Conley's affidavit provided that in early 2001, Harry Wayne Conley requested Clayton Conley take him to a lawyer so he could make a new will. Before Harry Wayne Conley contacted a lawyer or made a new document, he died. Clayton Conley's affidavit provides that he thinks perhaps Harry Wayne Conley may have destroyed the will, because when Clayton Conley asked Harry Wayne Conley about the original will, Harry Wayne Conley said he had "taken care of it."

[¶ 8] Albert Conley's affidavit provided that he and his brother, Colin Conley, had been appointed co-personal representatives of Harry Wayne Conley's estate. It also provided that Margaret York's attorney sent a letter stating Harry Wayne Conley's 1982 will could not be found and the estate would be distributed under an intestacy proceeding.

[¶ 9] Alma Lulay provided that she had been in custody of documents that belonged to Harry Wayne Conley's mother, Winnifred Conley, from May 1981 to September 1982, she thoroughly reviewed the documents in her possession, and she did not find an original or copy of the 1982 will.

[¶ 10] Margaret York's affidavit provided she was aware Harry Wayne Conley had created a will in 1982, and Winnifred Conley had given her a signed copy of Harry Wayne Conley's original will shortly after it was created. Margaret York's affidavit provided she had kept the copy of Harry Wayne Conley's signed will in her closet, along with some of her personal documents, but the will and several other documents were removed from her closet, without her permission or knowledge, sometime after Harry Wayne Conley's death. Margaret York's affidavit stated Clayton Conley had a key to her apartment, and Clayton Conley was the only person who would have had an interest in taking the documents. Margaret York's affidavit provided Harry Wayne Conley never told her about any intention to revoke his will, but rather that he intended the property in the will go to her.

[¶ 11] The deposition testimony of Carol Nelson related to the storage and retention of documents by the attorney who drafted the will, a conformed copy of which was admitted in this proceeding. The attorney who drafted the 1982 will provided deposition testimony related to the creation of the 1982 will.

[¶ 12] All of the affidavits, depositions, and notarized certificate were considered by the district court, along with briefs from the parties, filed both before and after the hearing.

[¶ 13] The district court issued its memorandum decision and order determining testacy dated August 24, 2007. The district court's memorandum decision and order reads, in part:

Margaret's attorney correctly points out that the North Dakota courts have never adopted the common law presumption of revocation of a lost will. The Court agrees with his contention that since the issue of whether or not there is a presumption of revocation of a lost will, has never been an "issue of first impression in this state" it follows that that presumption has never been adopted as a common law of this state. Thus, until North Dakota adopts a position regarding that issue, the law in North Dakota is unsettled. North Da-

kota common law is found in the decisions of the North Dakota courts, not the courts of other states. North Dakota's common law can only be created by our Supreme Court. In summary, the Court concludes that there is no common law presumption in North Dakota that there is a presumption that a lost will has been revoked. There being no such presumption, it follows that there is likewise no burden on the proponent to initially offer clear and convincing evidence to rebut such presumption.

. . . .

There is no dispute in this case that there has been a thorough search by all the relatives of Wayne and that the original has not been able to be produced. There is also evidence that the original will was properly executed on January 19, 1982 and was still in existence as late as January, 2001. There is no direct showing that the will was actually ever destroyed by Wayne. There is direct evidence that it was and is lost. The Court finds that it is proper to admit the conformed copy of the will as the Last Will and Testament of Wayne Conley and the Court further finds that the proponents have shown a prima facie case of proper execution and there has been no specific conduct to evidence revocation of the will as set forth in N.D.C.C. § 30.1–08–07. There being no showing of revocation by the opponents of the will and there being no statutory rebuttable presumption in North Dakota that the failure to find the original will creates a presumption of revocation, the Court finds that under the evidence and the circumstances in this case, Wayne did not revoke his January 19, 1982 will and the conformed copy presented to the Court is entitled to be admitted to probate.

[¶ 14] Based upon the district court's analysis, Harry Wayne Conley's 1982 will was not presumed to be revoked, and the terms of his will governed the terms under which his estate was devised. The district court awarded Margaret York the entirety of Harry Wayne Conley's estate as provided by his will. Following the order, the co-personal representatives filed a notice of appeal, arguing the district court improperly determined the terms of the will, rather than North Dakota's intestacy laws, controlled the distribution of his estate.

II

[¶ 15] The legal conclusions of a district court are fully reviewable upon appeal. *Darling v. Gosselin*, 1999 ND 8, ¶ 6, 589 N.W.2d 192. The interpretation and application of a statute is a question of law, which is also fully reviewable on appeal. *Estate of Allmaras*, 2007 ND 130, ¶ 13, 737 N.W.2d 612 (citing *Estate of Gleeson*, 2002 ND 211, ¶ 7, 655 N.W.2d 69). "We interpret uniform laws in a uniform manner, and we may seek guidance from decisions in other states which have interpreted similar provisions in a uniform law." *Allmaras*, at ¶ 13 (citing N.D.C.C. § 1–02–13; *Estate of Zimmerman*, 2001 ND 155, ¶ 14, 633 N.W.2d 594). When we interpret and apply provisions in the Uniform Probate Code ("Code"), we may look to the Code's Editorial Board Comments. *Estate of Gleeson*, 2002 ND 211, ¶ 7, 655 N.W.2d 69 (citing *Estate of Zimmerman*, at ¶ 14).

[¶ 16] Statutory interpretation also requires that "[w]ords used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears . . . ." N.D.C.C. § 1–02–02. "When the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1–02–05.

"In construing a statute, our duty is to ascertain the Legislature's intent, which initially must be sought from the statutory language itself, giving it its plain, ordinary, and commonly understood meaning. We construe statutes as a whole and harmonize them to give meaning to related provisions." *Estate of Kimbrell*, 2005 ND 107, ¶ 9, 697 N.W.2d 315 (citation and internal quotation omitted). There is no common law in any case where the law is declared by code. N.D.C.C. § 1–01–06.

[¶ 17] North Dakota has adopted section 2–507 of the Code as N.D.C.C. § 30.1–08–07, which reads, in relevant part:

Revocation by writing or by act.

1. A will or any part thereof is revoked:

    a. By executing a subsequent will that revokes the previous will or part expressly or by inconsistency; or

    b. By performing a revocatory act on the will, if the testator performed the act with the intent and for the purpose of revoking the will or part or if another individual performed the act in the testator's conscious presence and by the testator's direction. For purposes of this subdivision, "revocatory act on the will" includes burning, tearing, canceling, obliterating, or destroying the will or any part of it. A burning, tearing, or canceling is a "revocatory act on the will", whether or not the burn, tear, or cancellation touched any of the words on the will.

N.D.C.C. § 30.1–08–07(1)(a) and (b). This statute does not specifically speak to the effect of losing or misplacing a will; rather, this section discusses physical acts or acts of writing that may be used by a testator to revoke a will. No portion of N.D.C.C. ch. 30.1–08 provides a specific provision explaining the effect of factual circumstances in which a testator loses or misplaces a will. Section 30.1–08–07,

N.D.C.C., does not lack clarity, nor does it conflict with another statute on point. This provision is merely silent as to the loss of a will. The commentary in N.D.C.C. § 30.1–08–07(1)(a) and (b) does not deliver any guidance on this point.

[¶ 18] While N.D.C.C. § 30.1–08–07 does not speak to admitting a lost will, the drafter's of the Code did contemplate the probate of lost wills; this intent is evidenced by the commentary contained in other sections. *See* N.D.C.C. § 30.1–14–03. The commentary in N.D.C.C. § 30.1–14–03 states, "Lost or destroyed wills must be established in formal proceedings." The commentary in N.D.C.C. § 30.1–14–03 further directs that the probate of a lost, destroyed, or "otherwise unavailable" will be conducted under N.D.C.C. § 30.1–15–02, which reads:

1. Petitions for formal probate of a will, or for adjudication of intestacy . . . must be directed to the court, request a judicial order after notice and hearing, and contain further statements as indicated in this section. A petition for formal probate of a will:

    . . . .

    c. States whether the original of the last will of the decedent is in the possession of the court or accompanies the petition.

If the original will is neither in the possession of the court nor accompanies the petition and no authenticated copy of a will probated in another jurisdiction accompanies the petition, the petition must also state the contents of the will, and indicate that it is lost, destroyed, or otherwise unavailable.

N.D.C.C. § 30.1–15–02(1)(c).

[¶ 19] Neither N.D.C.C. §§ 30.1–14–03 nor 30.1–15–02 provide specific presumptions for admitting a missing will, but these statutes clearly indicate the drafter's

intent to allow, under certain circumstances, the probate of lost or missing wills.

[¶ 20] To date, this Court has not had an opportunity to interpret any of the statutes related to the probate of missing wills, and thus there is no clear authority on how to probate such a will. An exploration of North Dakota case law, in existence prior to the enactment of N.D.C.C. § 30.1–08–07(1)(a) and (b), shows that North Dakota, unlike a majority of jurisdictions, has not formally adopted or discussed the presumption of *animo revocandi*, which presumes a missing will has been intentionally destroyed and thus revoked by the testator, since the adoption of the Code. *See Estate of Phillips*, 359 Ill. App.3d 114, 295 Ill.Dec. 689, 833 N.E.2d 895, 901 (2005) (citations omitted) ("'Where a last will and testament, after its execution, is retained by the testator and cannot be found upon his death, it is the well-settled rule of this and of the majority of jurisdictions that it will be presumed to have been destroyed by him *animo revocandi*.'"); *see also Estate of Mecello*, 262 Neb. 493, 633 N.W.2d 892, 899–903 (2001) (discussing the *animo revocandi* presumption).

[¶ 21] The *animo revocandi* presumption is founded upon the observation that

[p]ersons in general keep their wills in places of safety, or, as we here technically express it, among their papers of moment and concern. They are instruments in their nature revocable: testamentary intention is ambulatory till death; and if the instrument be not found in the repositories of the test[at]or, where he had placed it, the common sense of the matter, prima facie, is that he himself destroyed it, meaning to revoke it. . . .

*Matter of Hartman's Estate*, 172 Mont. 225, 563 P.2d 569, 571 (1977) (citations and internal quotations omitted). The presumption intends to protect the testator's right to "change [his will] at pleasure" and recognizes "that wills are almost always destroyed secretly." *Tipton's Estate*, 173 Neb. 520, 113 N.W.2d 644, 647 (1962). Consequently, when a will cannot be found upon the death of the testator, the presumption arises that the testator secretly chose to revoke the missing will. *Id.* The fact that a conformed copy of the missing will is in the office of the attorney who drafted it does not alter the rationale for the presumption.

[¶ 22] Before adopting the Uniform Probate Code, North Dakota, like several other jurisdictions, had a statutory provision that provided the manner in which a lost will may be probated. The pre-Code statute read: "'No will shall be prov[ ]ed as a lost or destroyed will unless the same is proved to have been in existence at the time of the death of the testator, or is shown to have been fraudulently destroyed' during his lifetime." *Merrick v. Prescott*, 48 N.D. 195, 183 N.W. 1011, 1012 (1921) (quoting Comp. Laws § 8643 (1913)). North Dakota's pre-Code missing-will statute served as a bar against admitting a missing will for probate, unless evidence showed (1) the will was in existence at the time of the death of the testator, or (2) the will was fraudulently destroyed by a person other than the testator. *Merrick*, at 1012. The pre-Code statute codified two specific methods of overcoming the presumption, which presumption was implicitly recognized, but not codified, by the pre-Code statute. *See Matter of Hartman's Estate*, 172 Mont. 225, 563 P.2d 569, 572 (1977) (analyzing a Montana's pre-Code provision and explaining Montana's pre-Code "statute recognize[d] the former common law rule, by requiring proof either that the will was in existence at the time of the death of the

testator, or that the legal presumption that the testator destroyed it animo revocandi be overcome by satisfactory proof that it was fraudulently destroyed in the lifetime of the testator") (citations and internal quotations omitted).

[¶ 23]   Montana had a pre-Code statutory provision nearly identical to that of North Dakota:

> No will of any testator, who shall die after this chapter shall take effect as a law, shall be allowed to be proved as a lost or destroyed will, unless the same shall be proved to have been in existence at the death of the testator or be shown to have been fraudulently destroyed in the lifetime of the testator....

*Matter of Hartman's Estate*, 172 Mont. 225, 563 P.2d 569, 572 (1977). In *Hartman's Estate*, the Montana Supreme Court examined whether the *animo revocandi* presumption survived repeal of their pre-Code law on lost or destroyed wills, and whether it survived the adoption of the Uniform Probate Code. *Id.* at 570–73. In doing so, the court looked at whether the pre-Code law and the *animo revocandi* presumption were one and the same so that repeal of the law also revoked the presumption. *Id.* at 571. After reviewing its statutes and case law, Montana reasoned "this Court was speaking of two separate and distinct rules of law when they considered the statute, on one hand, and the presumption on the other." *Id.* at 572. The Montana Supreme Court discussed consistent decisions from other jurisdictions and ultimately concluded "the repeal of [the pre-Code laws] did not abolish the rebuttable presumption of revocation, which arises when a duly executed will, last seen in the testator's possession, cannot be found at his death." *Id.* at 573.

[¶ 24]   Like Montana, we conclude the repeal of the pre-Code statute did not repeal the common law presumption of *animo revocandi*. To interpret and apply Uniform Laws uniformly, we therefore join the majority of jurisdictions that have adopted the Code and that have concluded the presumption of *animo revocandi* can be and will be used with the Code. *See Estate of Mecello*, 262 Neb. 493, 633 N.W.2d 892, 899–903 (2001); *Estate of Phillips*, 359 Ill.App.3d 114, 295 Ill.Dec. 689, 833 N.E.2d 895, 901 (2005).

[¶ 25]   The district court reasoned that because this Court has not yet had the opportunity to consider the applicability of this presumption in North Dakota, the

> presumption has never been adopted as a common law of this state. Thus, until North Dakota adopts a position regarding that issue, the law in North Dakota is unsettled. North Dakota common law is found in the decisions of the North Dakota courts, not the courts of other states. North Dakota's common law can only be created by our Supreme Court.

The district court erred in defining and applying the common law in this case. North Dakota incorporates the common law as part of the law of North Dakota. "The decisions of the tribunals enforcing those rules, which, though not enacted, form what is known as customary or common law." N.D.C.C. § 1–01–03(7).

> "The common law is therefore adopted by statute as the basic law applicable to civil rights and remedies not defined by the statute. Where there is no express constitutional or statutory declaration upon the subject the common law is applied."

*Tarpo v. Bowman Pub. Sch. Dist.*, 232 N.W.2d 67, 70 (N.D.1975) (quoting *McLaughlin Oil Co. v. First State Bank of Buffalo*, 79 N.D. 525, 57 N.W.2d 860, 864 (1953) (internal citations omitted)). In this case, because there is no express law re-

garding the *animo revocandi* presumption, the common law is applied. *Zueger v. Carlson,* 542 N.W.2d 92, 95–96 (N.D.1996).

[¶ 26] Section 1–01–05, N.D.C.C., states that "[t]he evidence of the common law is found in the decisions of the tribunals." Section 1–01–05, N.D.C.C., does not provide that the common law is derived only from the decisions of North Dakota tribunals. This Court has been called upon to discuss the source and breadth of the common law:

> In determining the common law of this state we are not restricted to the law as it has evolved over the centuries in England. The common law, which is based on reason and public policy, can best be determined by studying the decisions of our federal and state courts and the writings of past and present students of our country's law over all the years of American judicial history. This is not to say that help in determining the common law may not be found by studying the ancient law of England, but we are in no wise limited to such a study for a determination of the common law of North Dakota.

*Lembke v. Unke,* 171 N.W.2d 837, 842 (N.D.1969).

[¶ 27] Here, the district court erred in determining this common law presumption did not exist in North Dakota because the issue has not been before this Court. As noted above, the *animo revocandi* presumption was an English common law rule, which was carried over and adopted by a majority of jurisdictions in the United States. The presumption exists at common law, and the district court erred in deciding such a presumption could not and did not exist because that issue had not been adjudicated by this Court. We adopt the presumption and must turn to the question of what standard of evidence is required to rebut the presumption.

[¶ 28] In a majority of jurisdictions, the courts employ something akin to a clear-and-convincing evidence standard. *See Estate of Richard,* 556 A.2d 1091, 1092 (Me.1989); *Estate of Glover,* 744 S.W.2d 939, 940 (Tex.1988); *Harris v. Harris,* 216 Va. 716, 222 S.E.2d 543, 545 (1976); *Estate of Newman,* 164 Mont. 15, 518 P.2d 800, 803 (1974); *Estate of Willis v. Willis,* 207 So.2d 348, 349 (Miss.1968); *Briscoe v. Schneider,* 97 Or.App. 352, 775 P.2d 925, 926–27 (1989). We note a clear-and-convincing standard is consistent with several evidentiary standards required in the North Dakota Uniform Probate Code for rebutting other presumptions. *See Estate of Wagner,* 551 N.W.2d 292, 295 (N.D. 1996) (providing an attestation clause is presumed to be true unless overcome by clear and convincing evidence); N.D.C.C. § 30.1–08–07(3) (providing that a new will, which completely disposes of the testator's estate, is presumed to replace an earlier will unless this presumption is rebutted by clear and convincing evidence); N.D.C.C. § 30.1–08–07(4) (a new will that does not completely dispose of the testator's estate is presumed to supplement an earlier will unless this presumption is rebutted by clear and convincing evidence). However, N.D.R.Evid. 301(a) provides that in presumptions arising in civil proceedings not otherwise provided for by statute, the party against whom a presumption arises "has the burden of proving that the nonexistence of the presumed fact is more probable than its existence." Because the presumption in the instant case is one derived of the common law, and not one in a statute that provides its own evidentiary burden, N.D.R.Evid. 301(a) requires the party seeking to probate the missing will to demonstrate, by a preponderance of the evidence, that the testator did not destroy

or revoke the missing will *animo revocandi.*

 [¶ 29] A party requesting the probate of a missing will must first comply with the procedures required under N.D.C.C. § 30.1–15–02(1)(c), which requires the party petitioning to probate the missing will to "[s]tate[ ] whether the original of the last will of the decedent is in the possession of the court or accompanies the petition[,]" and "[i]f the original will is neither in the possession of the court nor accompanies the petition and no authenticated copy of a will probated in another jurisdiction accompanies the petition, the petition also must state the contents of the will, and indicate that it is lost, destroyed, or otherwise unavailable." *See also Matter of Hartman's Estate,* 172 Mont. 225, 563 P.2d 569, 571 (1977) (providing a statutory provision, identical to N.D.C.C. § 30.1–15–02(1)(c), and explaining that the party seeking the probate of the lost will must comply with such requirements in the petition). After meeting the requirements of the petition provided in N.D.C.C. § 30.1–15–02(1)(c), the party petitioning for the probate of a missing will must demonstrate, by a preponderance of the evidence, that the will existed at the time of the testator's death, that the will was fraudulently destroyed in the lifetime of the testator, or by other evidence demonstrating the testator did not intend to revoke the missing will. N.D.R.Evid. 301(a) (stating the preponderance standard for presumptions); *Estate of Mason v. Mason,* 289 S.C. 273, 346 S.E.2d 28, 31 (Ct.App. 1986) (citing *Lowe v. Fickling,* 207 S.C. 442, 36 S.E.2d 293, 295 (1945) (emphasis in original) ("Once this presumption arises, the proponent of the missing will has the burden *of rebutting* it by showing either that: the will existed at the time of the testator's death, was lost after his death, or was destroyed by a third party without the testator's knowledge or consent.")); *Estate of Mecello,* 262 Neb. 493, 633 N.W.2d 892, 901 (2001) (providing that the presumption may be rebutted by several methods, so long as the missing will's proponent provides "circumstantial or other evidence to the contrary"). Only after the petitioners meet the requirements for the petition, as provided in N.D.C.C. § 30.1–15–02(1)(c), and rebut, by a preponderance of the evidence, the presumption that a missing will is revoked, may a conformed copy of the will be probated.

### III

[¶ 30] We reverse the district court order determining testacy in the estate of Harry Wayne Conley, concluding the district court erroneously failed to apply the common law presumption that a missing will is revoked, and we remand for further proceedings consistent with this opinion.

[¶ 31] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING and DANIEL J. CROTHERS, JJ., and ALLAN L. SCHMALENBERGER, D.J., concur.

[¶ 32] The Honorable ALLAN L. SCHMALENBERGER, D.J., sitting in place of SANDSTROM, J., disqualified.