Filed 2/17/12 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2012 ND 28

In the Matter of the Estate of Harriet O. Clemetson, deceased

Philip Sprague, Petitioner and Appellant

v.

Kenneth Evanson, Personal Representative, Respondent and Appellee

No. 20110108

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable Debbie Gordon Kleven, Judge.

AFFIRMED.

Opinion of the Court by Kapsner, Justice.

Sara Kaye Sorenson, P.O. Box 458, West Fargo, N.D. 58078-0458, for petitioner and appellant.

Craig Mark Richie, P.O. Box 2172, Fargo, N.D. 58107-2172, for respondent and appellee.

Estate of Clemetson

No. 20110108

Kapsner, Justice.

[¶1] Philip Sprague appeals from an order denying his petition for formal probate of a will allegedly executed by Harriet O. Clemetson.  Because we conclude the district court correctly applied the law on the presumption that a missing will is revoked, and because the court’s findings of fact are not clearly erroneous, we affirm the order.

I

[¶2] Harriet and Earl Clemetson were married for approximately 45 years and lived in Grand Forks County.  The couple had no children together, but each had a child from a previous relationship.  Harriet Clemetson’s son, Ritchie Evanson, died in 2003 and left four biological and two adopted children:  Lauri Bartlett, Shawn Evanson, Stephen Evanson, Kenneth Evanson, Dawn Chaffee and Ross Evanson.  Earl Clemetson’s daughter, Carolyn Sprague, is married to Kevin Sprague and they have three children:  Philip Sprague, Kevin Joseph Sprague II and Jennifer Sprague.

[¶3] In 1995, Harriet and Earl Clemetson met with a Grand Forks attorney, now deceased, for the purpose of preparing wills.  After Earl Clemetson died on January 18, 2009, his estate was probated in accordance with his will dated October 9, 1995.  Earl Clemetson devised a quarter section of land to Carolyn Sprague and devised his personal property, vehicles, farm machinery, equipment, crops, and bank and savings accounts to Harriet Clemetson.  The will directed that if Harriet Clemetson did not survive Earl Clemetson, the property would be awarded to Carolyn Sprague.  The remainder of the estate was devised to Carolyn Sprague, subject to a life estate in Harriet Clemetson.  The remainder included another quarter section of land, less the five-acre farmstead.  The farmstead was devised to Harriet Clemetson to be sold at a price she determined, with the sale proceeds kept by her.  Under the will, if Carolyn Sprague did not survive him, Earl Clemetson devised the property to her three children.  Earl Clemetson did not devise any property to Harriet Clemetson’s six grandchildren.

[¶4] After Earl Clemetson died, Harriet Clemetson revoked a power of attorney Harriet Clemetson had given to Carolyn Sprague and also removed her as the contingent beneficiary on an investment account she received from Earl Clemetson after his death.  On August 1, 2009, Carolyn Sprague purchased Harriet Clemetson’s interest in her life estate through a family distribution agreement under which the farmstead would be sold and Harriet Clemetson would move elsewhere.  Harriet Clemetson became very distraught at the subsequent auction sale where most of her belongings were sold.

[¶5] On October 2, 2009, Harriet Clemetson died from injuries suffered in a car accident.  Her grandson, Kenneth Evanson, applied for appointment as personal representative and stated in the application that “after the exercise of reasonable diligence, [he] is unaware of any unrevoked testamentary instrument relating to the property having a situs in this state.”  Evanson listed Harriet Clemetson’s six grandchildren as her surviving heirs entitled to her estate under the laws of intestate succession.  After Kenneth Evanson was appointed personal representative, Harriet Clemetson’s step-grandson and Carolyn Sprague’s son, Philip Sprague, filed a petition for formal probate of a will and asserted Harriet Clemetson had executed an unrevoked will that should be probated.  Philip Sprague presented an undated and unsigned document purported to be a copy of Harriet Clemetson’s will in which all nine of her grandchildren and step-grandchildren were named as devisees.  Kenneth Evanson objected to probate of the alleged will and asserted that the will was not duly executed and that because he could not find the original will, it was revoked under the presumption that a missing will has been revoked.

[¶6] Following a trial, the district court determined Harriet Clemetson’s will was duly executed but could not be found after her death.  The court further found Sprague had failed to rebut the presumption that a missing will is revoked.  The court concluded Harriet Clemetson’s surviving heirs under the laws of intestate succession are her six grandchildren and denied Philip Sprague’s petition.

II

[¶7] The parties challenge various facets of the district court’s decision.

[¶8] “Proponents of a will have the burden of establishing prima facie proof of due execution in all cases.”  N.D.C.C. § 30.1-15-07 (U.P.C. § 3-407); 
see also
 
Estate of Papineau
, 396 N.W.2d 735, 739 (N.D. 1986); 
Estate of Honerud
, 294 N.W.2d 619, 621 (N.D. 1980).  A prima facie case is established “[i]f the party bearing the burden of proof presents evidence strong enough, if uncontradicted, to support a finding in her favor.”  
Helbling v. Helbling
, 541 N.W.2d 443, 445 (N.D. 1995).  A prima facie case “is a bare minimum.”  
Tank v. Tank
, 2004 ND 15, ¶ 12, 673 N.W.2d 622.  Whether a prima facie case has been established is a question of law.  
See
 
O’Neill v. O’Neill
, 2000 ND 200, ¶ 8, 619 N.W.2d 855; 
Quarne v. Quarne
, 1999 ND 188, ¶ 12, 601 N.W.2d 256.  

[¶9] In 
Estate of Conley
, 2008 ND 148, ¶ 20, 753 N.W.2d 384, we discussed the presumption of 
animo revocandi
, “which presumes a missing will has been intentionally destroyed and thus revoked by the testator.”

The 
animo revocandi
 presumption is founded upon the observation that

[p]ersons in general keep their wills in places of safety, or, as we here technically express it, among their papers of moment and concern.  They are instruments in their nature revocable: testamentary intention is ambulatory till death; and if the instrument be not found in the repositories of the test[at]or, where he had placed it, the common sense of the matter, prima facie, is that he himself destroyed it, meaning to revoke it . . . .

Matter of Hartman’s Estate
, 172 Mont. 225, 563 P.2d 569, 571 (Mont. 1977) (citations and internal quotations omitted).  The presumption intends to protect the testator’s right to “change [his will] at pleasure” and recognizes “that wills are almost always destroyed secretly.”  
Tipton’s Estate
, 173 Neb. 520, 113 N.W.2d 644, 647 (Neb. 1962).  Consequently, when a will cannot be found upon the death of the testator, the presumption arises that the testator secretly chose to revoke the missing will.  
Id.
  The fact that a conformed copy of the missing will is in the office of the attorney who drafted it does not alter the rationale for the presumption.

 

Id.
 at ¶ 21.

[¶10] “Before a presumption arises, the party seeking to rely upon it must prove the requisite foundational facts by credible evidence.”  
Land Office Co. v. Clapp-

Thomssen Co.
, 442 N.W.2d 401, 406 (N.D. 1989); 
see also
 N.D.R.Ev. 301; 
Eddy v. Lee
, 312 N.W.2d 326, 330 (N.D. 1981) (“the party wishing to rely upon a presumption created by law must introduce credible evidence to establish the presumption before it will be effective”).  Once the presumption arises, “the party petitioning for the probate of a missing will must demonstrate, by a preponderance of the evidence, that the will existed at the time of the testator’s death, that the will was fraudulently destroyed in the lifetime of the testator, or by other evidence demonstrating the testator did not intend to revoke the missing will.”  
Conley
, 2008 ND 148, ¶ 29, 753 N.W.2d 384. 

[¶11] Whether a presumption arises, and whether a presumption has been rebutted, are questions of fact governed by the clearly erroneous standard of review under N.D.R.Civ.P. 52(a).  
See
 
Estate of Howser
, 2002 ND 33, ¶ 7, 639 N.W.2d 485 (whether presumption rebutted); 
Durward v. Nelson
, 481 N.W.2d 586, 589 (N.D. 1992) (whether presumption applicable).  A finding of fact is clearly erroneous only if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after review of the entire record, we are left with a definite and firm conviction a mistake has been made.  
Carlson v. Carlson
, 2011 ND 168, ¶ 15, 802 N.W.2d 436.  Under N.D.R.Civ.P. 52(a), we do not re-weigh conflicting evidence and we give due regard to the district court’s opportunity to judge the credibility of the witnesses.  
In re K.B.
, 2011 ND 152, ¶ 8, 801 N.W.2d 416.  A district court’s choice between two permissible views of the weight of the evidence is not clearly erroneous, and simply because we may have viewed the evidence differently does not entitle us to reverse the district court.  
Brandt v. Somerville
, 2005 ND 35, ¶ 12, 692 N.W.2d 144.

[¶12] In this case, the district court determined that Harriet Clemetson’s will had been duly executed, that the will could not be found upon her death, and that Sprague had failed to demonstrate by a preponderance of the evidence that the will existed at the time of her death, that someone other than Harriet Clemetson fraudulently destroyed the will during her lifetime, or that Harriet Clemetson did not intend to revoke her will.  These rulings are challenged on appeal.

A

[¶13] Kenneth Evanson argues the district court erred in determining that Harriet Clemetson’s will, which was undated and unsigned, had been duly executed.  Although Kenneth Evanson did not file a cross-appeal, an appellee is entitled on appeal to attempt to save a judgment by urging any ground asserted in the district court.  
See
 
Kalvoda v. Bismarck Pub. Sch. Dist. #1
, 2011 ND 32, ¶ 14, 794 N.W.2d 454.

[¶14] To be “duly executed,” a will must comply with the statutory requirements for execution.  
Estate of Wagner
, 551 N.W.2d 292, 295 (N.D. 1996).  The requirements for execution are found in N.D.C.C. § 30.1-08-02 (U.P.C. § 2-502), which provides:

1. Except as provided in subsection 2 and in sections 30.1-08-06 and 30.1-08-13, a will must be:

a. In writing.

b. Signed by the testator or in the testator’s name by some other individual in the testator’s conscious presence and by the testator’s direction.

c. Either signed:

(1) By at least two individuals, each of whom signed within a reasonable time after witnessing either the signing of the will as described in subdivision b or the testator’s acknowledgment of that signature or acknowledgment of the will; or

(2) Acknowledged by the testator before a notary public or other individual authorized by law to take acknowledgments.

2. A will that does not comply with subsection 1 is valid as a holographic will, whether or not witnessed, if the signature and material portions of the document are in the testator’s handwriting.

3. Intent that a document constitute the testator’s will can be established by extrinsic evidence, including, for holographic wills, portions of the document that are not in the testator’s handwriting.

 

[¶15] In ruling Harriet Clemetson’s will was duly executed, the district court relied upon the deceased attorney’s notes, the deposition testimony of the deceased attorney’s secretary, and the testimony of Kevin Sprague and Carolyn Sprague.  The deceased attorney’s notes indicated that Earl and Harriet Clemetson visited his office in 1995 to draft wills, Harriet Clemetson’s will was dated October 5, 1995, the original will was given to her, and only an unsigned draft of the will was kept in the attorney’s office.  The secretary testified she typed documents and witnessed wills, and recognized her signature and the attorney’s signature as witnesses on Earl Clemetson’s will, but did not recall witnessing the signing of either Earl or Harriet Clemetson’s will.  The secretary also testified that, based on their typical practice, if she and the attorney witnessed Earl Clemetson’s will, they also would have witnessed Harriet Clemetson’s will.  Kevin Sprague testified that in January 2009 he saw the original will, it was signed by Harriet Clemetson and by two other people on the same date as Earl Clemetson’s will, he read the will, and it was identical to the undated and unsigned copy received in evidence.  Kevin Sprague and Carolyn Sprague also testified Harriet Clemetson told them she had a will prepared at the same time that Earl Clemetson’s will was prepared.  The district court reasoned:

The Will of Earl Clemetson was found to be properly executed and admitted to probate.  Considering this evidence and the fact that the note from [the deceased attorney’s] file establishes that both Earl and Harriet Clemetson had wills prepared at the same time and that the originals were given to them, this Court finds the Spragues have met the burden of establishing the Will of Harriet Clemetson was duly executed.

 

[¶16] We conclude the district court did not err in determining Philip Sprague presented evidence strong enough to establish a prima facie case of due execution of Harriet Clemetson’s will in accordance with the requirements of N.D.C.C. § 30.1-08-

02 (U.P.C. § 2-502).

B

[¶17] Philip Sprague argues the district court erred as a matter of law in applying the presumption that a missing will is revoked, claiming the presumption cannot apply because the court noted in its decision “there is testimony that a will existed at the time of Harriet’s death,” and because Kenneth Evanson did not meet his burden of establishing that her will “could not have been found.”  

[¶18] In the section of its decision addressing whether Harriet Clemetson’s will was duly executed, the district court said “there is testimony that a will existed at the time of Harriet’s death,” and after reciting the evidence presented by Philip Sprague, noted “[n]one of this evidence was disproved or rebutted by Kenneth Evanson.”  However, in the section of its decision addressing whether the presumption had been rebutted, the court ruled “[a]fter a review of the evidence and consideration of the credibility of the witnesses, this Court finds that a Will of Harriet Clemetson did not exist at the time of her death.”  Because the court initially determined there was unrebutted testimony that a will existed at the time of Harriet Clemetson’s death, Philip Sprague contends the court erred as a matter of law in ruling the presumption was not overcome.

[¶19] Philip Sprague’s argument ignores the different legal standards the district court was required to employ in addressing these issues.  To decide whether Philip Sprague had established a prima facie case of due execution, the court had to determine only whether he presented “evidence strong enough, if uncontradicted,” to support a finding in his favor.  
Helbling
, 541 N.W.2d at 445.  In ruling Philip Sprague had established a prima facie case, the court pointed out the unrebutted “testimony that a will existed at the time of Harriet’s death.”  However, once the presumption arose, Philip Sprague had the burden of demonstrating by a preponderance of the evidence that the will existed at the time of Harriet Clemetson’s death.  
See
 
Conley
, 2008 ND 148, ¶ 29, 753 N.W.2d 384.  The court found Philip Sprague did not carry this burden because the credibility of the witnesses who testified a will was in existence “is suspect.”  Testimony may be uncontradicted, but not credible.  A trier of fact need not accept undisputed testimony.  
See, e.g.
, 
Olander Contracting Co. v. Gail Wachter Invs.
, 2002 ND 65, ¶ 37, 643 N.W.2d 29.  Consequently, there is no legal inconsistency in the court’s rulings that the “testimony” was sufficient to support a prima facie case of due execution, but insufficient to prove by a preponderance of the evidence that the will was in existence at the time of Harriet Clemetson’s death.

[¶20] Philip Sprague argues Kenneth Evanson failed to meet his burden to prove that Harriet Clemetson’s will “could not have been found” because he “cannot just testify, as he did, that he looked once, by himself, and concluded he could not find it.”  For the presumption to arise, Kenneth Evanson had the burden of proving by “credible evidence” that the will could not be found upon Harriet Clemetson’s death.  
See
 N.D.R.Ev. 301; 
Conley
, 2008 ND 148, ¶ 21, 753 N.W.2d 384.  The district court found that Kenneth Evanson searched for the will at least three times, noted his testimony that no will was found after a “thorough search” of Harriet Clemetson’s belongings, and concluded “[t]hus, under common law, the lost or missing will is presumed to have been secretly destroyed by Harriet Clemetson.”  Kenneth Evanson’s testimony about his unsuccessful searches for a will, if believed as it was by the district court here, can constitute credible evidence that the will could not be found upon the death of Harriet Clemetson.  
Cf.
 
State v. Glaesmen
, 545 N.W.2d 178, 182 n.1 (N.D. 1996) (indicating testimony of single witness, if credible, constitutes evidence).

[¶21] Philip Sprague relies upon 
Estate of Mecello
, 633 N.W.2d 892, 901-02 (Neb. 2001), where the court ruled the presumption did not apply because the proponent of the presumption failed to show the testator or anyone else had access to a bank safety deposit box supposedly containing the will before the proponent took possession of its contents.  The testator in 
Mecello
 told a friend five days before her death that she had a will in the bank safety deposit box.  
Id.
 at 902.  The proponent of the presumption, who would benefit from revocation of the will, emptied the contents of the safety deposit box after the testator’s death.  
Id.
  Because the proponent of the presumption failed to show from bank records that anyone had accessed the safety deposit box in that relatively short time period, the court held the “doctrine of animo revocandi should not have been applied in this case.”  
Id.
  
Mecello
 is clearly distinguishable from this case.  Harriet Clemetson kept her will at home where virtually anyone could gain access, not in a safety deposit box where bank records would reveal persons who had been granted access.  Furthermore, although witnesses claimed to have later seen an envelope titled “Last Will and Testament of Harriet Clemetson,” the last time anyone actually saw Harriet Clemetson’s will in the home was in January 2009 after Earl Clemetson’s death, but almost ten months before Harriet Clemetson died.  
Mecello
 is not persuasive under the circumstances present in this case.

[¶22] We conclude the district court’s finding that Harriet Clemetson’s will could not be found upon her death is not clearly erroneous.  The court correctly ruled the presumption is applicable.

C

[¶23] Philip Sprague argues the district court erred in ruling the presumption that a lost will is revoked was not rebutted.

[¶24] The district court painstakingly analyzed the factual issues involved in this case.  The court detailed the testimony of the witnesses, explained why the testimony of some witnesses was credible and why the testimony of others was not, and explained the inferences drawn from the evidence.  In general, the court viewed the evidence as portraying Philip Sprague and the other step-grandchildren being more concerned about Harriet Clemetson’s estate rather than her well-being, and portraying Kenneth Evanson and the other grandchildren who cared for Harriet Clemetson during her later years being unconcerned about her financial matters and genuinely concerned about her well-being.  In finding that Harriet Clemetson revoked her 1995 will, the court explained:

The testimony establishes that hard feelings developed between Harriet Clemetson and the Sprague family shortly after Earl Clemetson’s death.  As Carolyn and Kevin Sprague’s three children were getting ready to fly home after Earl Clemetson’s funeral, Philip Sprague asked Harriet Clemetson what was going to happen to his grandfather’s pickup, as Philip Sprague desired to have the vehicle. When this question was asked of her, Harriet Clemetson became very upset.  As testified to by Kevin Sprague, it was “kind of the straw that broke the camel’s back for her.”  The pickup was never discussed again, and it was eventually sold at the August auction sale.

Kenneth Evanson testified that after Earl Clemetson’s death, Harriet Clemetson felt pressured by Kevin Sprague to make financial decisions concerning Earl Clemetson’s property.  He described his grandmother as being very upset and grieving.  It appeared to him as though Kevin Sprague was not giving Harriet Clemetson enough time to grieve.  Instead, Kevin Sprague immediately immersed himself in the management of Earl Clemetson’s estate and attempted to address all of the matters that eventually need to be accomplished after a person dies, such as property distribution and financial decisions.  Kevin Sprague admitted on cross-examination that at times he was a “take charge kind of guy.”

 

. . . .

 

Kevin Sprague arranged for an auction sale to dispose of Harriet and Earl Clemetson’s property.  The auction sale was held in August of 2009 at Earl and Harriet Clemetson’s farmstead. According to Kenneth Evanson, the auction sale was a very distressing event for his grandmother as she had to watch all of her property being sold.  Jeff Clemetson [Earl and Harriet Clemetson’s nephew] was present with Harriet Clemetson at the auction sale, and he testified that Harriet Clemetson was very distraught even to the point of vomiting several times.  She appeared to be having difficulty with “all her and Earl’s life basically getting sold out on the front yard.”

 

. . . .

 

Based upon the testimony of the witnesses, this Court concludes that Harriet Clemetson felt pressured by Kevin Sprague’s attempts to take over the management of the farm and the financial affairs that she and her husband had managed together for 45 years.  Her frustration was demonstrated by her reaction to Philip Sprague when he asked for Earl Clemetson’s pickup and by her reaction during the auction sale. Simply put, Kevin and Caroline Sprague appeared to be pressuring Harriet Clemetson into making life-changing decisions that she was not ready to make so soon after her husband’s death.

There is another legitimate reason why Harriet Clemetson no longer desired to distribute her estate under the terms of her 1995 Will. As testified to by all of the witnesses, the Evanson and Sprague families were never close.  In fact, it appears that Earl and Harriet Clemetson intentionally kept the two families from interacting with each other. The Spragues occasionally traveled from their home in the state of Michigan to North Dakota to visit Earl and Harriet Clemetson.  When the Spragues visited in North Dakota, the Evansons were not included in these visits.  Further, the testimony of Carolyn Sprague, Kevin Sprague, Cathy Knudson [Earl and Harriet Clemetson’s niece], and Jeff Clemetson supports a finding that Earl Clemetson was not fond of Harriet Clemetson’s grandchildren, the Evansons.  One of these witnesses even testified that Earl Clemetson “was concerned about the character of Kenny and his siblings.” Through their testimony, these witnesses also conveyed a lack of fondness for Harriet Clemetson’s grandchildren. . . .

Harriet Clemetson, on the other hand, treated her grandchildren well.  According to the testimony of Kevin Sprague, Harriet Clemetson thought highly of Kenneth Evanson.  Of all Harriet Clemetson’s grandchildren and step-grandchildren, Kenneth Evanson was the family member who had the closest relationship with Harriet Clemetson. Kevin [sic] Evanson talked to Harriet Clemetson on a frequent basis and made weekly trips to her rural Grand Forks County home from Fargo for visits and to help her out.  Of all of her grandchildren and step-grandchildren, Kenneth Evanson spent the most time with Harriet Clemetson and looked out for her.  During their weekly visits, Kenneth Evanson never inquired into his grandmother’s financial matters or estate plans.  It was his position that it was not his place to tell her “how to plan or to do with whatever she had.”  In his opinion, his grandmother was a smart woman who had her affairs in order.

. . . . The only information Harriet Clemetson volunteered to Kenneth Evanson with respect to her estate plans were her remarks that Earl Clemetson had already taken care of his family by his will so she was going to take care of her family.  This is consistent with the fact that Earl Clemetson’s Will did provide for his daughter, Carolyn Sprague, and her children but he did not provide anything for Harriet Clemetson’s grandchildren.

Kenneth Evanson’s testimony is more credible than the testimony of Kevin Sprague.  During the approximate ten months after Earl Clemetson died, Kenneth Evanson never pried into his grandmother’s affairs as he deemed it none of his business. Kevin Sprague, on the other hand, admitted that he was very concerned about the size of Harriet Clemetson’s estate and who would benefit from her estate.  The Spragues presented no credible evidence that discredits the reliability of Kenneth Evanson’s testimony.

Similarly, there is no evidence that Kenneth Evanson or a member of his family destroyed the Will of Harriet Clemetson. First, in order for Kenneth Evanson to have realized that he would be entitled to a bigger share of Harriet Clemetson’s estate if Harriet Clemetson died without a will, he would need to know the laws of intestacy. Secondly, the evidence suggests that Kenneth Evanson was not even aware there may have been a will until Kevin Sprague immediately began his quest for a will soon after Harriet Clemetson’s death.

The Spragues have failed to rebut the presumption of 
animo revocandi
 as they failed to prove by a preponderance of the evidence that there was a will in existence at the time of Harriet Clemetson’s death, that someone other than Harriet Clemetson fraudulently destroyed her will during her lifetime, or that Harriet Clemetson did not intend to revoke her will.

 

[¶25] Upon our review of the record, we conclude the district court’s finding that Philip Sprague failed to rebut the presumption by a preponderance of the evidence is not clearly erroneous.

III

[¶26] It is unnecessary to address other arguments raised because they are either unnecessary to the decision or are without merit.  The order is affirmed.

[¶27] Carol Ronning Kapsner

Mary Muehlen Maring

Daniel J. Crothers

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.