# IN THE SUPREME COURT STATE OF NORTH DAKOTA

## 2019 ND 257

In the Matter of the Estate of Jacquelynn D. Blikre

| | |
|---|---|
| Jean Nordahl, as Personal Representative of the Estate of Jacquelynn D. Blikre, Deceased, | Petitioner and Appellee |
| v. | |
| Sharron Jensen, | Respondent and Appellant |
| and | |
| Jennifer Jensen, | Interested Party and Appellant |
| and | |
| Tamara Engle, | Interested Party |

## No. 20180162

Appeal from the District Court of Mountrail County, North Central Judicial District, the Honorable Richard L. Hagar, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice.

Charles (Casey) L. Chapman, Bismarck, N.D., for petitioner and appellee.

Andrew D. Cook (argued) and Sara K. Sorenson (on brief), West Fargo, N.D., for appellants.

## Estate of Blikre
## No. 20180162

**Tufte, Justice.**

[¶1] Sharron and Jennifer Jensen appeal district court orders: (1) admitting a copy of Jacquelynn Blikre's will to formal probate; (2) ruling Blikre's will was valid; and (3) denying a petition for formal probate of Blikre's alleged holographic will. We affirm.

I

[¶2] Blikre executed a will in 2005. The will left Blikre's estate, including real property and minerals, to her sister, Sandra Nordahl, and named Nordahl personal representative of the estate. Blikre's other sister, Sharron Jensen, was excluded from the will.

[¶3] In April 2016, Blikre was hospitalized after suffering from several health issues. In May 2016, she was moved to a Bismarck nursing home and resided there until her death in September 2016. While she was hospitalized, Blikre appointed Sharron Jensen as Blikre's attorney-in-fact for financial matters. Blikre had also appointed Sandra Nordahl's husband, Jean Nordahl, as Blikre's attorney-in-fact under a durable power of attorney in March 2016.

[¶4] After Blikre's death, Sandra Nordahl petitioned for formal probate of Blikre's will. Nordahl attached a copy of the will to the petition because the original will was missing. Jensen objected to Nordahl's petition, claiming Blikre's will should be considered revoked because the original was missing. The district court appointed Nordahl personal representative subject to a decision on whether the copy of Blikre's will would be admitted to probate.

[¶5] Sandra Nordahl died after her appointment as personal representative. Jean Nordahl petitioned for appointment as successor personal representative. Jensen also petitioned for appointment. At an October 2017 hearing, the parties presented evidence on the existence of Blikre's will and whether she intended to revoke it before her death. In

1

February 2018, the district court entered an order finding sufficient evidence existed to rebut the presumption that Blikre intended to revoke her will. The court ordered formal probate of the copy of Blikre's will and appointed Jean Nordahl as personal representative.

[¶6]   In April 2018, Sharron Jensen appealed the district court's order, and Jennifer Jensen petitioned for formal probate of a holographic will and to vacate the February 2018 order admitting the copy of Blikre's will to probate. Jennifer Jensen's petition alleged Blikre wrote instructions in 2016 relating to her estate. Jensen claimed the handwritten documents were a holographic will that revoked the 2005 will and distributed Blikre's estate to her sisters and nieces. This Court remanded for the limited purpose of consideration and disposition of Jennifer Jensen's petition.

[¶7]   In December 2018, Jennifer and Sharron Jensen moved for partial summary judgment. They argued Blikre's will was invalid because it was not executed in front of two witnesses as required under N.D.C.C. § 30.1-08-02. They also claimed Blikre's handwritten documents were a holographic will that revoked and replaced her earlier will. Jean Nordahl disputed Jensen's assertions. After an evidentiary hearing, the district court dismissed Jensen's petition, finding Blikre's handwritten documents did not express her testamentary intent to distribute her estate and did not revoke her 2005 will. The court also found Blikre's 2005 will was valid because credible evidence showed the will was executed in front of two witnesses.

II

[¶8]   Jennifer and Sharron Jensen argue the district court's February 2018 order for formal probate of the copy of Blikre's will should be vacated. They claim Blikre's 2005 will was invalid because it was not executed in front of two witnesses. They assert that even if the will was validly executed, Blikre revoked her will and replaced it with a holographic will. They also argue Jean Nordahl failed to rebut the presumption that Blikre's 2005 will was revoked.

## A

[¶9] Wills are governed by N.D.C.C. ch. 30.1-08. Under N.D.C.C. § 30.1-08-02(1)(c)(1), a testator must sign a will in the presence of two witnesses, who must also sign the will. "The right to make a will disposing of one's property is statutory and unless a testator complies with the prescribed statutory formalities, the will is invalid." *Estate of Voeller*, 534 N.W.2d 24, 25 (N.D. 1995).

[¶10] Here, Blikre's will includes Blikre's signature and the signatures of two witnesses. Above the witnesses' signatures, the will contains a paragraph stating each witness "in the presence and hearing of the testator, signs this will as witness to the testator's signing." The three signatures were followed by a notary block signed by Wade Enget. This Court has stated, "Recitals in an attestation clause of a will are presumed to be true and *can be used to establish due execution* unless the presumption of truth is overcome by clear and convincing evidence." *Estate of Wagner*, 551 N.W.2d 292, 295 (N.D. 1996) (quoting *Estate of Stanton*, 472 N.W.2d 741, 744 (N.D. 1991)).

[¶11] The Jensens' argument on the validity of Blikre's will is based on Jean Nordahl's November 2018 deposition testimony about the circumstances surrounding the execution of the will. Nordahl testified that he believed Blikre signed the will in his pickup and attorney Wade Enget notarized Blikre's signature. Nordahl did not testify about any witnesses that were present when Blikre signed her will. Nordahl later submitted an affidavit stating he may have been mistaken and confused about what he remembered. Enget testified at the October 2017 hearing that he did not recall the exact circumstances surrounding the will's execution, but to the best of his knowledge he believed all of the formalities involved with executing the will were followed. Enget also submitted an affidavit stating he "would not have notarized [the witnesses'] signatures if the witnesses had not been physically present at the time of signature."

[¶12] Because the district court had already ordered a copy of Blikre's will to probate, the court treated the Jensens' argument on the validity of the

will as a motion for reconsideration or N.D.R.Civ.P. 60(b) motion for relief based on newly discovered evidence. The court relied on Enget's earlier testimony and affidavit in finding there was "credible evidence that the witnesses were physically present when [Blikre's] 2005 Will was executed."

[¶13] The district court did not address the presumption that Blikre's will was duly executed; however, the court's finding relating to the presence of two witnesses implies the Jensens failed to overcome the presumption of due execution with clear and convincing evidence. The court's findings relating to the execution of Blikre's will have support in the record. We conclude the court did not err in finding Blikre's will was properly executed in the presence of two witnesses.

B

[¶14] The Jensens argue the district court erred in finding Blikre's handwritten documents were not a holographic will.

[¶15] Under N.D.C.C. § 30.1-08-02(2), "[a] will . . . is valid as a holographic will, whether or not witnessed, if the signature and material portions of the document are in the testator's handwriting." Material portions of a holographic will express donative and testamentary intent. *Estate of Krueger*, 529 N.W.2d 151, 154 (N.D. 1995). "Unless a duly executed will is ambiguous, the testamentary intent is derived from the will itself, not from extrinsic evidence." *Estate of Ostby*, 479 N.W.2d 866, 871 (N.D. 1992) (citing N.D.C.C. § 30.1-09-03).

[¶16] The Jensens assert two documents in Blikre's handwriting constitute a holographic will that revoked Blikre's 2005 will. They claim the holographic will distributed Blikre's estate to her sisters, Sandra Nordahl and Sharron Jensen, and her nieces, Jennifer Jensen and Tamra Engel.

[¶17] The purported holographic will consists of a twelve-page document and a two-page document, referred to by the district court as Exhibit A and Exhibit D-8. The parties agreed the documents were written by Blikre. Exhibit A includes references to dates during April 2016. Exhibit D-8 is not

4

dated, but evidence presented by Jean Nordahl showed it was likely drafted more than two years before Exhibit A.

[¶18] The district court found, "as a matter of law, that Exhibits A and D-8 do not constitute a holographic will," explaining:

> Much of Exhibit A is difficult to decipher. Some of the exhibit is written in cursive, some of it is in printed form. [Jean Nordahl] acknowledged, however, that Exhibit A is in [Blikre's] handwriting.
>
> In paragraph 20 of the Court's February 26, 2018, Order, the Court noted receipt of "12 hand written pages, Exhibit A, showing a compilation of the notes and instructions which were drafted by Jacquelynn." The Court further noted: "There are a variety of requests to have items picked up from the ranch home, directions to those people who were caring for the ranch and its livestock, and notes regarding taxes." "There are also notes seeking relief for, or assistance in dealing with, Jacquelynn's health problems."
>
> Page 8 of Exhibit A contains the following:
>
> To → Sharron Jensen   ) Fargo, ND
>        Jennifer Jensen   )
> To → Sandra Nordahl   ) Eureka, MT
>        Tamra Engel      )
>
> You'll have to drive to the (farm) this fall (sometime) check things over.
>
> This is preceded by:
>
> April 24/2016 Sunday 3:AM
> 2 old houses together / west house / Mom's / Antiques. Buffet / old cubard (sic) / Table and chairs / stero. (sic) / old TV etc. A lot of the items were boxed up from the (live in trailer house & put in the house).
>
> Whatever Jacquelynn meant by her words on page 8 of Exhibit A, the Court finds they do not clearly express donative

intent and there is no credible extrinsic evidence to the contrary.

. . . .

Exhibit D-8 contains Jacquelynn's name in printed, not cursive, form. The printed words on Exhibit D-8 appear to be substantially the same as the printed portion of Exhibit A. Exhibit D-8 speaks to Jacquelynn's desire to be cremated and her concern for her dogs, cats, and horses "in regard to when I leave this life." However, except for her intention to "leave some of my assets for someone or other to take care of my (dogs and cats) on the farm / to all be kept together as a (family) till (sic) they leave this earth." Exhibit D-8 contains nothing that could be construed as donative intent.

. . . .

Exhibits A and D-8 do not meet the criteria necessary under North Dakota law to qualify as a holographic will. Even though both exhibits were undisputedly written by Jacquelynn, only Exhibit D-8 contained Jacquelynn's name (albeit in printed, not signature, form), but Exhibit D-8 did not, in any manner, express donative intent. Except for the words "To Sharron, Jennifer" and "To Sandra, Tamra," Exhibit A did not clearly express any donative intent.

Additionally, there is no evidence that would establish that Jacquelynn intended for Exhibits A and D-8 to be two parts of a single document. Even if the two exhibits were to be construed as a single document, however, clear donative and testamentary intent are still lacking.

[¶19] After reviewing the handwritten documents, the district court found that the documents lack testamentary intent. The documents primarily contain notes and instructions relating to various items from Blikre's home and ranch. The page containing the "To" language followed by the names of Blikre's sisters and nieces does not specify whether the household items listed above the names were to be distributed between Blikre's sisters and nieces. The remaining pages of Exhibits A and D-8 do not explicitly devise

anything to anyone. Additionally, Blikre's signature does not appear on the documents. Blikre's name is printed on two of the exhibits' pages; however, there is nothing matching Blikre's signature as it appears on her 2005 will, the March 2016 durable power of attorney to Jean Nordahl, or the April 2016 general power of attorney to Sharron Jensen. The two printed names are positioned at the top of the page and in the middle of the page surrounded by other text, unlike a typical signature, which appears after the content the signer is acknowledging with a signature. We conclude the district court did not err in finding as a matter of law that Blikre's handwritten documents do not constitute a holographic will.

C

[¶20] The Jensens argue the district court clearly erred in finding Jean Nordahl rebutted the presumption that Blikre's missing will was revoked.

[¶21] The presumption of *animo revocandi* "presumes a missing will has been intentionally destroyed and thus revoked by the testator." *Estate of Clemetson*, 2012 ND 28, ¶ 9, 812 N.W.2d 388 (quoting *Estate of Conley*, 2008 ND 148, ¶ 20, 753 N.W.2d 384). After the presumption arises, "the party petitioning for the probate of a missing will must demonstrate, by a preponderance of the evidence, that the will existed at the time of the testator's death, that the will was fraudulently destroyed in the lifetime of the testator, or by other evidence demonstrating the testator did not intend to revoke the missing will." *Clemetson*, at ¶ 10 (quoting *Conley*, at ¶ 29).

[¶22] Whether a presumption arises, and whether a presumption has been rebutted, are questions of fact reviewed under the clearly erroneous standard of N.D.R.Civ.P. 52(a). *Clemetson*, 2012 ND 28, ¶ 11, 812 N.W.2d 388. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made. *Id.* Under N.D.R.Civ.P. 52(a), we do not reweigh conflicting evidence, and we give deference to the district court's opportunity to judge the credibility of the witnesses. *Clemetson*, at ¶ 11.

7

[¶23] The testimony included no statement by anyone who had seen Blikre's will since its 2005 execution. Jean Nordahl and Sharron Jensen testified about whether Blikre's will existed at the time of her death and whether the will was revoked. Nordahl testified he and Sandra Nordahl received a copy of Blikre's will after Blikre executed it in 2005. He testified that in the spring of 2016, Blikre told him she wanted to convey her minerals to her sisters. He testified Blikre told him to divide the minerals between Sharron and Sandra because Sandra was getting the rest of her estate. Nordahl testified Blikre did not indicate to him that her will was revoked or was going to be revoked after giving him the instructions to convey her minerals. In June 2016, Nordahl, as Blikre's attorney-in-fact, executed a mineral deed conveying Blikre's minerals to Sharron Jensen and Sandra Nordahl.

[¶24] Sharron Jensen testified that while Blikre was hospitalized in April 2016, Jensen asked her if she had a will and Blikre shook her head "no." Sharron Jensen testified Blikre shook her head because she was unable to speak. Jennifer Jensen testified she was also present when Blikre indicated she did not have a will.

[¶25] The district court discussed the conflicting testimony from Nordahl and Sharron Jensen and found Jensen's testimony was not credible. The court discounted her credibility in part because it found Jensen gave unclear and contradictory testimony relating to a security box removed from Blikre's home. Blikre had instructed Jensen to retrieve a security box from Blikre's home. Blikre stored important documents in the security box, including abstracts. Jensen testified that when she opened the security box she did not find any abstracts. The court found Jensen opened the security box even though Blikre did not instruct her to open it. The court found Jensen was the only family member who visited Blikre's home from April 2016 until her death. The court also found Jensen had difficulty producing receipts for expenditures made from Blikre's bank account and could not explain why she wrote checks to herself from Blikre's account. The court stated, "Certain actions of Sharron, in her capacity as an attorney-in-fact

8

for Jacquelynn, based upon the power of attorney, call into question her truthfulness and accountability when dealing with Jacquelynn's finances."

[¶26] Although the district court found that no one had seen Blikre's original will since its execution, the court found Nordahl rebutted the presumption of *animo revocandi*. The court stated that "a preponderance of the evidence supports a finding that the will did exist at the time of Jacquelynn's passing, that Jacquelynn did not intend to revoke her will, and that the will is missing after Sharron was the only family member to access the ranch home where the will would have been located." The court weighed conflicting testimony on whether Blikre's will existed at her death and whether she intended to revoke the will. The court found Jensen was not credible. Nordahl's testimony about Blikre's instructions to divide her minerals between Sharron and Sandra because Sandra was getting the rest of her estate reaffirms Blikre's devise of her estate to Sandra under the will and shows Blikre did not intend to revoke the will.

[¶27] We conclude the district court did not clearly err in finding that Nordahl rebutted the presumption of *animo revocandi*. The court's finding was not induced by an erroneous view of the law, nor are we left with a definite and firm conviction a mistake has been made.

III

[¶28] It is not necessary to address the Jensens' remaining arguments because they are either unnecessary to the decision or are without merit. The orders are affirmed.

[¶29] Jerod E. Tufte
Daniel J. Crothers
Lisa Fair McEvers
Jon J. Jensen
Gerald W. VandeWalle, C.J.

9